IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**CLAYTON J. FUCICH**                                                                **PLAINTIFF**

**v.**                                                          **CIVIL ACTION NO. 1:25-cv-160-TBM-RPM**

**BARRY W. ASHE**                                                                    **DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER**</u>

*Pro se* Plaintiff Clayton Fucich has filed a frivolous lawsuit against District Judge Barry Ashe. Despite the clear lack of merit, the lawsuit must be dismissed for lack of personal jurisdiction over Judge Ashe. But even if the Court did have personal jurisdiction, Judge Ashe would be entitled to judicial immunity. This case is dismissed.

### I. BACKGROUND

Fucich owns Fucich Contracting Inc., a Mississippi-based company. In 2016, St. Bernard Parish contracted with FCI to service the Lake Borgne Basin Levee in Louisiana. [1], p. 6. Before its completion, FCI sued St. Bernard Parish in the Eastern District of Louisiana for failure to pay on the contract. *Id.* Fucich and his wife also joined as plaintiffs. *See* Third Supplemental Complaint at 2, *Fucich Contracting, Inc. v. Shread-Kuyrkendall & Assocs., Inc.*, No. 23-30087, (E.D. La. Oct. 31, 2022), Dkt. No. 241. Judge Ashe presided over the assigned case. *Id.*

Nearly a year into the litigation, the parties reached an interim settlement agreement. *Id.* at p. 7. FCI agreed to release specific equipment and materials necessary for the levee's operation in exchange for partial payment. *Id.* Fucich claims that both sides upheld their end of the bargain. *Id.* at pps. 7–8. Almost two years later, however, St. Bernard Parish moved to enforce the interim settlement agreement, claiming that FCI still possessed or controlled equipment covered under the agreement in Mississippi. *Id.* at p. 8. The court granted St. Bernard Parish's motion and ordered

FCI to deliver the equipment. *Id.* at p. 9. Around two months passed, and St. Bernard Parish moved to enforce the court's order and for contempt. *Id.* It also requested a hearing on the motions. *Id.* At the hearing, Judge Ashe called all counsel into his chambers. *Id.* According to Fucich, Judge Ashe *allegedly* told FCI's *counsel* that Fucich would be imprisoned *if* the court found FCI in contempt. *Id.* at pps. 9–10. Sometime thereafter, the court continued the hearing to the next week. *Id.* at p. 10.

At the hearing, Fucich testified on FCI's behalf. He argued that FCI did not violate the court's order because it never retrieved the equipment, and it therefore was still in the third-party vendor's possession in Gulfport, Mississippi. *Id.* Judge Ashe denied both of St. Bernard Parish's motions. *Id.* at pps. 10–11. Judge Ashe held no party in contempt. And no party was imprisoned. But Judge Ashe did issue a clarifying order, directing the "plaintiffs to turn over to St. Bernard Parish any missing items listed on Exhibit B still held in their possession, and/or that they *facilitate, to the extent they are able,* the provision of such missing items from [the third-party vendor]." *Id.* at p. 11 (emphasis added).

Fucich then began to retrieve the already-purchased equipment from the nearby vendor. *Id.* at p. 12. He did so and notified St. Bernard Parish that he was prepared to turn the equipment over "in accordance with the Order." *Id.* Shortly after this correspondence, Judge Ashe found in St. Bernard Parish's favor on the merits after a bench trial. *See id.*; *see also Fucich Contracting, Inc. v. Shread-Kuyrkendall & Assocs., Inc.*, No. CV 18-2885, 2022 WL 16552815, at *42–43 (E.D. La. Oct. 31, 2022), *aff'd,* No. 23-30087, 2024 WL 1329964 (5th Cir. Mar. 28, 2024), *cert. denied,* 145 S. Ct. 175, 220 L. Ed. 2d 31 (2024).[1] After Judge Ashe's bench ruling and in response to Fucich's

---

[1] Fucich asks this Court to declare the judgments, orders, and proceedings issued by Judge Ashe as void under Federal Rule of Civil Procedure 60(b)(4). [14], p. 1. The Court lacks jurisdiction to do so. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 313, 115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995) ("[I]t is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected.") (quoting *Walker v. Birmingham,* 388 U.S. 307, 314,

correspondence, St. Bernard Parish asked Fucich to ship the equipment via common carrier. [1], p. 12. But Fucich changed his tune. He refused to ship the equipment because St. Bernard Parish "provided no prepaid shipping labels or other means to pay to have the items shipped." *Id.* To date, Fucich has not tendered these items. *Id.* at p. 15. Fucich has now initiated this suit against Judge Ashe under some type of fanciful involuntary servitude argument that Fucich appears to be basing on the Trafficking Victims Protection Reauthorization Act.

## II. PERSONAL JURISDICTION

Fucich's suit makes an Everest-size mountain out of an imagined molehill. For context, the Trafficking Victims Protection Reauthorization Act criminalizes offenses related to forced labor, such as involuntary servitude, and sex trafficking. *See* 18 U.S.C. § 1581, *et seq.* It also permits victims to sue offenders for civil damages under 18 U.S.C. Section 1595(a). Fucich maintains that he is a victim. He seems to allege that since Judge Ashe's order—which merely told Fucich to "facilitate" the return of St. Bernard Parish's equipment "to the extent [he is] able"—did not compensate Fucich for facilitating the missing equipment's return, then this somehow equates to involuntary servitude. *See* [1], pps. 11–16. He seeks more than $200 million in damages under Section 1595(a). *Id.* at 15–16. Judge Ashe moved to dismiss for lack of personal jurisdiction. The Court agrees and thus may not decide the merits of Fucich's claims, even if they appear frivolous on their face.

### A. Legal Standard

Federal courts have limited jurisdiction. The Due Process Clauses of the Fifth and Fourteenth Amendments impose one such limit: personal jurisdiction. *See Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 11, 145 S. Ct. 2090, 222 L. Ed. 2d 296 (2025). Personal jurisdiction

---

87 S. Ct. 1824, 1828, 18 L. Ed. 2d 1210 (1967)); *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006) ("A federal district court lacks jurisdiction to review decisions of other federal courts."). Fucich's motion [14] is denied.

refers to the court's "power over the parties." *Id*. Without it, the court cannot resolve the case. *Id*. "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). "The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a *prima facie* showing suffices." *Id*. The Court "must resolve all undisputed facts submitted by the plaintiff . . . in favor of jurisdiction." *Id*.

A federal court's personal jurisdiction over a non-resident rests on a two-step inquiry: (1) "absent a controlling federal statute regarding service of process, the court must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant;" and (2) "the court establishes whether the exercise of jurisdiction is consistent with due process under the United States Constitution." *Lahman v. Nationwide Provider Sols.*, No. 4:17-CV-00305, 2018 WL 3035916, at *4 (E.D. Tex. June 19, 2018); *accord Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.,* 249 F.3d 413, 418 (5th Cir. 2001).

## B. Analysis

Section 1595(a) of the Trafficking Victims Protection Reauthorization Act—the controlling federal statute—does not authorize personal jurisdiction over Judge Ashe.[2] The Court's inquiry

---

[2] Section 1595(a) does permit victims to bring a civil action "in an appropriate district court of the United States." [7], p. 8. This language, however, concerns venue, not process. "Congress generally uses the expression, where suit 'may be brought,' to indicate the federal districts in which venue is proper." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 408, 137 S. Ct. 1549, 198 L. Ed. 2d 36 (2017). "In contrast, Congress's typical mode of providing for the exercise of personal jurisdiction has been to authorize service of process." *Id*. at 409 (discussing federal statutes that permit nationwide service of process); *see also Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 106–07, 108 S. Ct. 404, 98 L. Ed. 2d 415 (1987). Compared to other statutes with nationwide service-of-process provisions, Section 1595(a) clearly does not contain similar language. *See C.T. v. Red Roof Inns, Inc.*, No. 2:19-CV-5384, 2021 WL 2942483, at *9 (S.D. Ohio July 1, 2021) (collecting federal statutes). Therefore, Section 1595(a) does not confer personal jurisdiction by authorizing nationwide service of process. *See Taylor v. Salvation Army Nat'l Corp.*, No. 21-CV-6105, 2022 WL 22861527, at *4 (N.D. Ill. Sept. 19, 2022) (holding 1595(a) "does not provide for nationwide service of process"), *aff'd,* 110 F.4th 1017 (7th Cir. 2024); *F.C. v. Jacobs Sols. Inc.*, 790 F. Supp. 3d 1158, 1175 (D. Colo. 2025) (same).

therefore turns on Mississippi's long-arm statute and the Fourteenth Amendment's[3] Due Process

limitations. Fucich argues that he served Judge Ashe in accordance with Mississippi's long-arm

statute, and the Court's exercise of personal jurisdiction over Judge Ashe comports with due

process. Now, the "court would ordinarily discuss the question of whether Mississippi's state law

---

Moreover, although Fucich claims that his "action is based solely on 18 U.S.C. [Section] 1595," he also cites Section 1596—the Trafficking Victims Protection Reauthorization Act's extra-territorial jurisdictional provision. *See* [7], p. 8. To the extent he argues that Section 1596 also provides nationwide service of process, the Court rejects that argument as well for the same reasons. "Section 1596 is devoid of any reference to the concept of 'service of process' let alone nationwide service of process." *C.T. v. Red Roof Inns, Inc.*, No. 2:21-CV-05022, 2022 WL 18003292, at *5 (S.D. Ohio Dec. 30, 2022) (denying request for interlocutory appeal because, in part, "there exists no substantial ground for difference of opinion" about whether Section 1596 authorizes nationwide service of process).

[3] Although this is a federal question case, the Fourteenth—not the Fifth—Amendment's limiting principles guide the jurisdictional analysis where the plaintiff seeks to establish personal jurisdiction under the forum state's long-arm statute. *See Daimler AG v. Bauman*, 571 U.S. 117, 125, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014) (applying Fourteenth Amendment analysis where plaintiff argued the state's long-arm statute established personal jurisdiction over defendants for federal statutory claims); *Walden v. Fiore*, 571 U.S. 277, 134, S. Ct. 1115, 188 L. Ed. 2d 12 (2014) (same); *see also Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 713, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982) (Powell, J., concurring) ("Because of the District Court's reliance on the Pennsylvania long-arm statute . . . the relevant constitutional limits would not be those imposed directly on the federal courts by the Due Process Clause of the Fifth Amendment, but those applicable to state jurisdictional law under the Fourteenth."). Because Congress did not speak to personal jurisdiction in Section 1595(a), *see supra* note 2, the Court looks to Mississippi's long-arm statute under Federal Rule of Civil Procedure 4(k)(1)(A). In doing so, the Court assumes the jurisdictional power—and its limits under the Fourteenth Amendment—of its state-court counterparts in Mississippi. *See Canaday v. Anthem Companies, Inc.,* 9 F.4th 392 (6th Cir. 2021) (Sutton, J.) (noting if Congress had spoken to personal jurisdiction in the FLSA, "any limitation on its authority would arise from the Fifth Amendment's Due Process Clause . . . not the Fourteenth Amendment's Due Process Clause and its requirement of minimum contacts with the host State"); *see also* Adam N. Steinman, WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1069 (4th ed. 2025) ("When Rule 4(k)(1)(A) is the basis for personal jurisdiction in federal court, the federal court must apply the state's long arm statute and the Fourteenth Amendment due process test that would apply in state court."). The Supreme Court's recent holding in *Fuld* does not change this analysis. *Fuld* clarified that the Fifth Amendment governs in *some* federal question cases, such as those where a federal statute authorizes personal jurisdiction. *Id.* at 11 (quoting FED. R. CIV. P. 4(k)(1)(C)). But the Supreme Court did not express whether the Fifth Amendment applies to *all* federal question cases. In fact, it recognized that "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons" under Rule 4(k)(1)(A). *Id.* (quoting *Daimler AG*, 571 U.S. at 125). Other courts continue to apply the Fourteenth Amendment's framework post-*Flud* when Rule 4(k)(1)(A) establishes personal jurisdiction in federal question cases. *See Lelchook v. Societe Generale de Banque au Liban S.A.L.*, 147 F.4th 226, 238 n.9 (2d Cir. 2025) (notwithstanding *Fuld*, "[t]he familiar Fourteenth Amendment analysis continues to apply . . . where state law binds a federal court in determining the bounds of its jurisdiction over persons as it does under Rule 4(k)(1)(A)"); *Harrington v. Cracker Barrel Old Country Store, Inc.*, 142 F.4th 678, 687 (9th Cir. 2025) ("[T]he FLSA contains no [nationwide service] provision, which means that we must look to state law and, in turn, the Fourteenth Amendment."), *cert. denied sub nom.*, No. 25-534, 2026 WL 490496 (U.S. Feb. 23, 2026); *see also F.C. v. Jacobs Sols. Inc.*, 790 F. Supp. 3d at 1174–75 (Section 1595 of the Trafficking Victim Protection Reauthorization Act). Finally, neither party argues that the Fifth Amendment applies to all federal cases. But even if they did, and were right, the Court would not change its holding. As the Supreme Court noted: "Any difference between the Fifth and Fourteenth Amendments is therefore implicated in only a subset of federal cases, such as those in which personal jurisdiction . . . is authorized by a federal statute" *Fuld*, 606 U.S. at 11. This federal case does not fall into that subset.

allows the assertion of personal jurisdiction over the defendant first, but it will discuss the federal due process prong first in this case." *McBride v. CRST/CRST The Transp. Sol., Inc., Expedited Sols.*, No. 1:24-CV-64-TBM-RPM, 2025 WL 2701695, at *1 (S.D. Miss. Sept. 22, 2025) (quoting *Wilmington Tr., N.A. v. Lincoln Benefit Life Co.*, 328 F. Supp. 3d 586, 589 (N.D. Miss. 2018)). The Court does so primarily because "the law relating to the due process issues is considerably clearer in this context." *Id.* (citation modified) (quoting *Wilmington Tr., N.A.*, 328 F. Supp. 3d at 586).[4] The due process prong is also decisive.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66. S. Ct. 154, 90 L. Ed. 95 (1945)). "The Due Process Clause of the Fourteenth Amendment permits a court to exercise personal jurisdiction over a foreign defendant when (1) that defendant has purposefully availed himself of

---

[4] Fucich relies exclusively on the Mississippi long-arm statute's tort prong because he says Judge Ashe ordered the plaintiffs, including him, to "facilitate, to the extent they [were] able, the provision" of the missing items in the Mississippi-based third-party vendor's possession. [1], p. 11; [7], p. 9. This argument results in a clunky analysis because it can presume a tort occurred in the first place. Indeed, the Fifth Circuit has recognized that when "personal jurisdiction is predicated on the commission of a tort within the state, of course the jurisdictional question involves some of the same issues as the merits of the case, and the plaintiff must [also] make a prima facie case on the merits" *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982); *accord ITR Am., LLC v. TREK, Inc.*, No. 3:16-CV-703-WHB-JCG, 2017 WL 5244715, at *8 (S.D. Miss. Sept. 26, 2017). To avoid applying Mississippi law to the merits of Fucich's mostly nonsensical claims, the Court only recognizes that Fucich did not allege any facts suggesting that Judge Ashe violated 18 U.S.C. Sections 1584, 1589, or 1593A. "[T]he prohibition against involuntary servitude does not prevent governments 'from compelling their citizens, by threat of criminal sanction, to perform certain civic duties.'" *Haas v. Wisconsin*, 241 F. Supp. 2d 922, 935 (E.D. Wis. 2003) (quoting *United States v. Kozminski*, 487 U.S. 931, 943–44, 108 S. Ct. 2751, 101 L. Ed. 2d 788 (1988)), *aff'd,* 109 F. App'x 107 (7th Cir. 2004). "Complying with court orders and judgments is a civic duty." *Id.* Thus, Fucich did not suffer a legally protected injury for involuntary servitude or any other theory merely because Judge Ashe ordered him to facilitate, to the extent he was able, the equipment's return. Therefore, any contacts arising from Judge Ashe's order do not support Fucich's prima facie case for personal jurisdiction. *See e.g.*, *Allred v. Moore & Peterson*, 117 F.3d 278, 285 (5th Cir. 1997) (affirming district court's refusal to exercise personal jurisdiction "because the only activity alleged by [plaintiff] to have taken place in Mississippi was the service of process by certified mail from Texas to his Mississippi law office—an event which is simply not an element (or part of an element) of the tort of abuse of process . . ."); *Haas Outdoors, Inc. v. Dryshod Int'l, LLC*, 347 F. Supp. 3d 266, 270 (N.D. Miss. 2018) (holding Mississippi long-arm statute's tort prong did not cover alleged conduct because, in part, the plaintiff had "shown no evidence that a trademark injury occurred in Mississippi at all").

the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002) (internal quotations and citation omitted); *Halliburton Energy Servs. Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019).

The minimum contacts requirement can be established either through contacts sufficient to establish general jurisdiction or specific jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). "Where a defendant has 'continuous and systematic general business contacts' with the forum state, . . . the court may exercise 'general' jurisdiction over any action brought against that defendant." *Luv N' care, Ltd.,* 438 F.3d at 469 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)). But when "contacts are less pervasive, the court may still exercise 'specific jurisdiction' in a suit arising out of or related to the defendant's contacts with the forum." *Id*. Ultimately, the defendant's conduct must be so connected with the forum State, "such that he should reasonably anticipate being haled into court there." *Burger King,* 471 U.S. at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S. Ct. 580, 62 L. Ed. 2d 490 (1980)). Here, Fucich does not contend that Judge Ashe is subject to general jurisdiction in Mississippi. *See* [7], p. 9 ("The 'minimum contact' which applies in this case is the contact which gives rise to specific personal jurisdiction."). So this Court must decide whether Fucich's allegations are sufficient to establish specific personal jurisdiction over Judge Ashe.

In intentional-tort cases, "[t]he inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden*, 571 U.S. at 283–84. (quoting *Keeton v. Hustler Mag., Inc.,* 465

U.S. 770, 775, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984)). "A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the *defendant* that creates the necessary contacts with the *forum*." *Daughtry v. Silver Fern Chem., Inc.*, 138 F.4th 210, 216 (5th Cir. 2025) (emphasis added) (quoting *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495 (5th Cir. 2022)), *cert. denied,* 146 S. Ct. 369, 223 L. Ed. 2d 197 (2025). "[I]t is insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of the plaintiff." *Id.* (quoting *Danziger & De Llano,* 24 F.4th at 495). Accordingly, "the proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290.

Fucich does not claim that Judge Ashe committed the alleged torts in Mississippi. As Judge Ashe noted in his motion, which Fucich did not dispute in his response, "Judge Ashe sits in the Eastern District of Louisiana. The hearings were conducted in the Eastern District of Louisiana and his orders were issued there." [6], p. 10. Instead, Fucich claims that Judge Ashe purposefully directed his activities toward Mississippi by simply ordering the plaintiffs, including Fucich, to "facilitate, to the extent they are able, the provision of such missing items from [the third-party vendor]." [1], p. 11; *see* [7], p. 10.[5]

Fucich's argument, however, flips the minimum contacts inquiry on its head. *Stroman Realty, Inc. v. Wercinski* is instructive. 513 F.3d 476 (5th Cir. 2008). There, a Texas-based real estate firm sued for declaratory and injunctive relief in a federal court in Texas. *Id.* at 481. It sought to prevent the Commissioner of the Arizona Department of Real Estate from exercising regulatory authority over the company's transactions involving Arizona residents and real estate. *Id.* at 480–81. "[T]he totality of the Commissioner's contacts with Texas involve[d] a [mailed] cease and

---

[5] Fucich does not support his argument with any case law.

desist letter and correspondence with [the plaintiff's] attorneys." *Id.* at 484. The district court dismissed the case for claim preclusion and abstention. *Id.* at 481.

The Fifth Circuit affirmed the dismissal but on personal jurisdiction grounds. *Id.* at 489. It reasoned that the Commissioner did not "expressly aim[]" her actions at Texas; rather, her intent was "to uphold and enforce the laws of Arizona." *Id.* at 486 (quoting *Calder v. Jones,* 465 U.S. 783, 789, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)). Moreover, the Commissioner's relationship with Texas was "based entirely on the unilateral actions and decisions of [the plaintiff], not the Commissioner." *Id.* The plaintiff "chose to market Arizona properties and transact business with Arizona residents. Arizona [was] simply attempting to uniformly apply its laws." *Id.* "Although the Commissioner 'reached out'" to the Texas-based plaintiff via the cease-and-desist letter, the court concluded, she "could not have reasonably anticipated being haled into federal court in Texas to defend her enforcement of the Arizona statute." *Id.* at 484.

Against the backdrop of *Stroman*, Judge Ashe did not aim his actions at Mississippi. For starters, Judge Ashe never reached out directly to Mississippi. Fucich neither disputes that Judge Ashe entered the order in Louisiana nor alleges that Judge Ashe sent the order to him in Mississippi. But even if he did send the order to Mississippi, it would have been to "uphold and enforce" federal law. *Id.* at 486; *see Def. Distributed v. Grewal*, 971 F.3d 485, 491 (5th Cir. 2020); *cf. Lopez v. Mineta*, 87 F. App'x 998 (5th Cir. Feb. 20, 2004) (affirming district court dismissal of suit against defendants in their individual capacities for lack of personal jurisdiction because there "were no allegations showing that the defendants, *as individuals*, had either specific or general minimum contacts" with the forum state) (emphasis added). As far as the record is concerned, it does not appear that Judge Ashe ever "traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to [Mississippi]." *Walden*, 571 U.S. at 288.

9

Absent such allegations, the Court's exercise of jurisdiction over Judge Ashe, based on the missing equipment's location, would "impermissibly allow[] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* at 289. In support of its contract with St. Bernard Parish, FCI chose to purchase equipment from a vendor in Mississippi. [1], p. 10. When the contract turned sour, FCI chose to sue St. Bernard Parish in the Eastern District of Louisiana. And Fucich chose to join the suit, thereby consenting to the federal court's jurisdiction, just as the *Stroman* plaintiff consented to Arizona's jurisdiction by participating in its real estate market. Furthermore, despite the parties reaching an interim settlement agreement before a magistrate judge, *id.* at p. 7, Fucich at first chose not to retrieve the equipment, *id.* at p. 11. Then, once he did pick up the equipment, Fucich refused to ship the equipment to Louisiana in response to St. Bernard Parish's request. *Id.* at p. 12. Indeed, Fucich acknowledges these choices: "At the time the Order was issued, plaintiff did have the ability to facilitate the provision of missing items listed on exhibit B from [the vendor], in accordance with the Order, but had no will to do so." *Id.* at p. 11. As a result, Judge Ashe's contact with Mississippi is based entirely upon Fucich's unilateral decisions. Like the Arizona Real Estate Commissioner, Judge Ashe was enforcing the interim settlement agreement via the court order. His mere knowledge that compliance with the order could[6] have an effect in Mississippi does not "connect[] him to the forum in a meaningful way." *Walden*, 571 U.S. at 290 ("Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections.").

To hold otherwise would vastly expand federal jurisdiction in contravention of widely recognized principles. For example, Fucich's argument would allow plaintiffs to manufacture

---

[6] The Court cabins its language because Judge Ashe's order only required FCI to facilitate the missing items "to the extent they [were] able." *Id.* Had FCI not been able to retrieve the equipment, Judge Ashe's order would have had no effect in Mississippi.

personal jurisdiction over a non-resident judge in any state they chose to store items that became the subject of a court order. As noted above, *Stroman* rejected a similarly broad principle as applied to executive officials. 513 F.3d at 487–88 (rejecting argument where "the Commissioner—and, for that matter, any state official seeking to enforce her state's laws—could potentially be subjected to suit in any state where the validity of her state's laws were in question"). Further, other district courts, relying on *Stroman*, have found personal jurisdiction lacking against a non-resident judge where it was based solely on a ruling's effect in the forum state. *See Shia v. Boente*, No. CV H-17-1255, 2017 WL 6033741, at *5 (S.D. Tex. Nov. 16, 2017), *report and recommendation adopted,* No. CV H-17-1255, 2017 WL 6025546 (S.D. Tex. Dec. 5, 2017); *Saxton v. Faust*, No. 3:09-CV-2458-K, 2010 WL 3446921, at *3 (N.D. Tex. Aug. 31, 2010); *cf. Vashisht-Rota v. Utah Att'y Gen.*, No. 22-CV-0978-AGS-KSC, 2023 WL 5767203, at *5 (S.D. Cal. Sept. 6, 2023); *Evens v. Connolly*, No. CV 20-165-M-DLC-KLD, 2021 WL 1341866, at *4 (D. Mont. Feb. 24, 2021), *report and recommendation adopted,* No. CV 20-165-M-DLC, 2021 WL 1050455 (D. Mont. Mar. 19, 2021). So too does this Court. "Based on such minimal known contacts, [Judge Ashe], a nonresident [judge], could not have reasonably anticipated being haled into federal court in [Mississippi] to defend [his] enforcement" of the order. *Stroman Realty, Inc.*, 513 F.3d at 485.

Because Judge Ashe does not have the requisite minimum contacts with the State of Mississippi, this Court "need not inquire into fairness." *McFadin v. Gerber*, 587 F.3d 753, 761 (5th Cir. 2009). Fucich failed to allege a prima facie case of personal jurisdiction over Judge Ashe. For all the reasons set forth above, the interests of justice mandate dismissal. Judge Ashe's motion to dismiss [5] is granted.

### III. JUDICIAL IMMUNITY

Even if this Court had personal jurisdiction, Judge Ashe argues that he is entitled to judicial immunity for his alleged actions during the FCI litigation. [6], pps. 13–14. The Court agrees and would dismiss Fucich's claims for this alternative reason, too.

The Fifth Circuit analyzes motions to dismiss based on judicial immunity under a Rule 12(b)(6) standard. *Morrison v. Walker*, 704 F. App'x 369, 372 n.5 (5th Cir. 2017) (noting "arguments for immunity are attacks on the existence of a federal cause of action"). To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Alexander v. Reese*, 702 F. App'x 223, 228 (5th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft*, 556 U.S. at 662).

"It is well established that judges enjoy absolute immunity for judicial acts performed in judicial proceedings." *Jones v. King*, 148 F.4th 296, 300 (5th Cir. 2025), *cert. denied,* No. 25-658, 2026 WL 642837 (U.S. Mar. 9, 2026) (quoting *Mays v. Sudderth*, 97 F.3d 107, 110 (5th Cir. 1996)). "Indeed, 'immunity applies even when the judge is accused of acting maliciously and corruptly.'" *Id.* (quoting *Pierson v. Ray*, 386 U.S. 547, 554, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967)). "There are two—and only two—circumstances in which immunity yields: when a judge acts outside her judicial capacity, or when she acts in the clear absence of all jurisdiction." *Id.* (internal citations omitted). Neither circumstance applies here.

Judge Ashe's alleged conduct fell within his judicial capacity. "To determine whether an action is within a judge's judicial capacity," the court considers four factors:

> (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity.

*Morrison*, 704 F. App'x at 373 (quoting *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005)). Although immunity may apply even if "one or more of these factors is not met," *id.*, each factor applies here. To begin, "holding contempt hearings is a normal judicial function." *Id.* at 374. Ordering a party to comply with an interim settlement agreement is too. Second, Fucich does not allege that any conduct occurred outside of Judge Ashe's courtroom or chambers. As for the third and fourth factors, the contempt hearing and subsequent order centered around Fucich's conduct during the FCI litigation and arose directly from the parties' visit to Judge Ashe in his presiding capacity.

Judge Ashe also acted within his jurisdiction. "[W]here a court has some subject-matter jurisdiction, there is sufficient jurisdiction for immunity purposes." In FCI's original complaint, it recognized that the Eastern District of Louisiana had diversity jurisdiction under 28 U.S.C. § 1332(a) "because FCI and the Defendants are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs." Complaint at 2, *Fucich Contracting, Inc.,* No. 23-30087, Dkt. No. 1. Fucich also recognized the presence of diversity jurisdiction when he later joined the case. *See* Third Supplemental Complaint at 2–3, *Fucich Contracting, Inc.,* No. 23-30087, Dkt. No. 241. Aside from conclusory arguments that Judge Ashe does not enjoy judicial immunity because his order allegedly violated federal criminal statutes, *see* [7], p. 15, Fucich does not contest the Louisiana federal court's subject matter jurisdiction over the FCI litigation. Judge Ashe is not stripped of his judicial immunity because neither exception applies. If the Court had personal jurisdiction over Judge Ashe, it would grant Judge Ashe's [5] motion to dismiss Fucich's claims for failure to state a claim.

## IV. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Defendant Barry Ashe's [5] Motion to Dismiss is GRANTED, and Plaintiff Clayton Fucich's claims against him are DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction.

IT IS FURTHER ORDERED AND ADJUDGED that Defendant Barry Ashe's [11] Motion to Strike Plaintiff's Rebuttal [10] is MOOT.

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff Clayton Fucich's [14] Motion to Declare Void the Orders, Judgements, and Proceedings handed down by Judge Barry W. Ashe is DENIED.

THIS, the 31st day of March, 2026.

_____
**TAYLOR B. McNEEL**
**UNITED STATES DISTRICT JUDGE**